**Robert E. HANSON and Mary D. Kice, Plaintiffs,**

v.

**UNIFIED SCHOOL DISTRICT NO. 500, WYANDOTTE COUNTY, KANSAS, et al., Defendants.**

**Civ. A. No. KC–3512.**

United States District Court,
D. Kansas.

Sept. 5, 1973.

Ward D. Martin, of Crane, Martin, Claussen & Hamilton, Topeka, Kan., for plaintiffs.

Willard L. Phillips, of McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

Plaintiff Robert E. Hanson, a resident of Independence, Missouri, and plaintiff Mary D. Kice, a resident of Johnson County, Kansas, are teachers employed by the defendant Unified School District No. 500. On March 30, 1972, they brought this action pursuant to 42 U.S. C. § 1983, alleging that a regulation of the defendant school district deprives them of their constitutional rights under the Fourteenth Amendment. The regulation provides:

"No. 4116.1(1) Residence within Wyandotte County shall be required of all certificated employees unless written authorization for such residence elsewhere is secured from the superintendent of schools or his designated agent."

"No. 4116.1A(1) Request for permission to reside outside Wyandotte County shall be made in written form and submitted to the assistant superintendent for personnel and should include such information as might be pertinent to consideration of the request."

"No. 4116.1A(2) Exceptions to the policy may be granted only when it is not contrary to the effective performance of duties on the part of such employee."

Each plaintiff holds a valid teacher's certificate from the State of Kansas.

The challenged regulation is one of long standing which defendants have enforced by sending out notices each year. The plaintiffs allege that, although the superintendent or his designated agent has in the past granted them waivers, plaintiffs have now been notified that they must establish residence in Wyandotte County, Kansas, prior to March 1, 1973, if they wish to continue teaching in the defendant school district in the 1973–74 school year. (Enforcement of the regulation is voluntarily being held in abeyance pending the outcome of this suit.) Plaintiffs contend that the attempt to coerce them to move to Wyandotte County violates their constitutional rights to live and work where they choose and to travel freely, as protected by the Due Process and Equal Protection Clauses of the Fourteenth Amendment:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We shall consider only the equal protection argument since we think it is dispositive of the case.

Under the Tenth Amendment to the Constitution, education is one of the powers reserved to the states, subject to the "protective perimeters of the rest of the Constitution." Shanley v. Northeast Ind. Sch. Dist., Bexar County, Tex., 462 F.2d 960, 967 (5th Cir., 1972). Local school boards act as arms of the state in formulating and implementing educational policies. When such policies are

alleged to constitute state action infringing upon constitutional rights, they may come under judicial scrutiny. Thus public school teachers—such as these plaintiffs—whose contracts are allegedly not being renewed because of the exercise of their constitutional rights have a remedy in the Civil Rights Act, 42 U.S.C. § 1983. Robbins v. Board of Ed. of Argo Community High School Dist. 217, Cook County, Ill., 313 F.Supp. 642 (D.C.Ill. 1970).

■ When called upon to decide whether a law or regulation violates the Equal Protection Clause of the Fourteenth Amendment, a court looks in essence to three things: the character of the classification in question; the individual interest affected by the classification; and the government interest asserted in support of the classification. Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274 (1971). The challenged classification in the case at hand is based solely upon residency: residents of other than Wyandotte County are discriminated against in seeking employment in the defendant school district. The case law dealing with simple residency requirements is relatively sparse, although this kind of classification bears a resemblance to durational residency requirements considered by the Supreme Court in Dunn v. Blumstein, supra, and to citizenship requirements discussed in Sugarman v. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973).

Plaintiffs contend that this classification based upon residency infringes their rights to travel freely and to live and work where they choose. We cannot agree that a simple residency requirement impinges upon the right to travel, inasmuch as all residents of Wyandotte County, both new and old, are treated the same: all are eligible for employment as teachers. In other words, we do not have here a durational residency requirement which discriminates against those who have exercised their right to travel. Cf. Dunn v. Blumstein, supra.

The right to live where one chooses has long been recognized as one of the liberties protected from arbitrary governmental action by the Fourteenth Amendment. Allgeyer v. Louisiana, 165 U.S. 578, 589, 17 S.Ct. 427, 41 L.Ed. 832 (1897). It has been said that this right may be abridged only "under circumstances of direct emergency and peril." Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944).

■ Similarly, the right to work in one's chosen profession is embodied in the Fourteenth Amendment's concept of liberty. "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915).

In effect, the school board's regulation requires the plaintiffs to choose between their rights to live and to work where they desire. They may either live outside Wyandotte County or they may teach in the school district within the county. They may not, however, do both. Cf. Dunn v. Blumstein, supra, 405 U.S. at 342, 92 S.Ct. 995.

In support of the regulation, the school district asserts that residency requirements are "neither new, novel or unique." Indeed, such requirements for public office or employment extend to the highest offices in the land and date from the earliest history of our republic. The apparent justification for the present requirement is twofold: (1) that there is no "right" to public employment; and (2) that the public employer should have broad discretion to establish qualifications for its employees related to effective job performance.

■■ The notion that a governmental benefit, such as employment, may be made to turn upon whether it is characterized as a "right" or as a "privilege" is no longer valid. Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d

534 (1971). Whether or not there is an abstract "right" to public employment, the government cannot pass a law providing that "no Republican, Jew or Negro shall be appointed to federal office, or that no federal employee shall attend Mass or take any active part in missionary work." United Public Workers v. Mitchell, 330 U.S. 75, 100, 67 S.Ct. 556, 91 L.Ed. 754 (1946); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L. Ed. 216 (1952); Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1960). To allow the government to deny a person public employment because of the exercise of his constitutionally-protected interests would allow the government to " 'produce a result which [it] could not command directly.' Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible." Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972); Lontine v. Van Cleave, 483 F.2d 966 (10th Cir., 1973). In the instant case, we must reject the argument that the school district, the governmental body here involved, may require the plaintiffs to live in Wyandotte County merely because they have no "right" to public employment. By the same token, we do not believe that plaintiffs, by virtue of simply signing their contracts, can be said to have "voluntarily waived" the exercise of their constitutional rights to live and to work where they choose. Insofar as O'Melia v. Sweetwater County School District No. 1, 497 P. 2d 540 (Wyo.1972), a case cited by defendants, supports this contention it erroneously assumes that government may thus produce a result which it could not command directly. Speiser v. Randall, *supra*.

In conjunction with the "right-privilege" argument, defendant school district relies upon the "public interest" doctrine. The doctrine is rooted in the concepts of privileges and of the desirability of confining the use of public resources of the state to the advancement and profit of the members of the state.

People v. Crane, 214 N.Y. 154, 161, 108 N.E. 427, 429 (1915), aff'd 239 U.S. 195, 36 S.Ct. 85, 60 L.Ed. 218 (1915); see Sugarman v. Dougall, *supra*, 634 U.S. at 644, 93 S.Ct. 2842. In the current context, defendant school district asserts that the doctrine means tax revenues of the school district should be expended only for salaries of teachers who reside within Wyandotte County. This overlooks the fact that there are other school districts within Wyandotte County with separate tax bases. Also, because of recent massive infusions of state funds, Kansas local revenues have become of decreasing importance in the financial support of Kansas schools. Most importantly, in balancing the opposing interests here involved, it is clear that the possible contribution of these plaintiffs to the school district's tax base is infinitesimal when compared to the interference with plaintiffs' rights. Donnelly v. City of Manchester, 111 N.H. 50, 274 A. 2d 789, 792 (1971); *cf.* Smith v. Losee, 485 F.2d 334 (10th Cir., 1973) at 14–15.

We have no doubt that it is in the best interest of the school district—indeed, of everyone concerned—that public school employment depend upon effective performance. *Cf.* United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). Thus the stated purpose of the residency requirement of the defendant school district is a legitimate, even laudable, one. Nevertheless, regulations intended to assure effective performance, but based upon classifications, must meet an "exacting standard of precision." Dunn v. Blumstein, *supra*, 405 U.S. at 360, 92 S.Ct. 995. The classifications here are much too crude by any standard and have not been "tailored" to meet their avowed purpose. The defendant school district offers no proof that residents of Wyandotte County are more effective teachers than non-residents, and defendants would doubtless be hard pressed to demonstrate that a Johnson County resident is not as well-qualified to teach as a Wyandotte County resi-

dent. Teachers are certified by the state and, therefore, are presumably qualified to teach anywhere in the state. Moreover, the challenged regulation ignores the fact that even within Wyandotte County there are many people who do not reside in the defendant school district; * for example, residents of the Bonner Springs school district, which is in the westernmost part of Wyandotte County, are eligible to teach in the defendant school district even though they may live a greater distance than a Johnson County or even a Missouri resident.

We recognize, of course, that there are many public positions where residency or citizenship may properly be required. Defendants assert that there are 38 statutes of the State of Kansas, for example, which apply residency or citizenship requirements to public office or employment. It has been held that the Tenth Amendment reserves to the states the power to prescribe the qualifications of its officers and employees. Boyd v. Thayer, 143 U.S. 135, 12 S.Ct. 375, 36 L.Ed. 103 (1892); Sugarman v. Dougall, *supra*. Such power inheres in the state by virtue of its obligation "to preserve the basic conception of a political community." Dunn v. Blumstein, *supra*, 405 U.S. at 344, 92 S.Ct. at 1004. Thus a state may set qualifications for "persons holding state elective or important non-elective executive, legislative, and judicial positions, for officers who participate directly in the formulation, execution, or review of broad public policy perform functions that go to the heart of representative government." Sugarman v. Dougall, *supra*, 634 U.S. at 647, 93 S.Ct. at 2850. As Judge Lumbard said in his concurring opinion at the trial court level in the *Sugarman* case, there is "where citizenship [or residency] bears some rational relationship to the special demands of the particular position." 339 F.Supp. 906, at 911 (D.C.).

We have no reason to disagree with the line of cases cited by defendants in which police officers have been required to live where they work. School teachers and policemen can hardly be placed in the same category. As the court said in Detroit Police Officers Ass'n v. City of Detroit, 385 Mich. 519, 190 N.W.2d 97 (1971): "The job of a policeman does have 'natural distinguishing characteristics' from all other city employees. There is a special relationship between the community policed and a policeman." (at 97–98.) Hence, even though the Supreme Court dismissed the Detroit case on appeal for want of a substantial federal question, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227, we do not find this compelling authority for upholding the residency requirement here.

■ The court concludes that the residency requirement of the defendant school district violates the Fourteenth Amendment's equal protection guarantee, because the classification of residents versus non-residents of Wyandotte County is essentially arbitrary and does not rest upon any reasonable basis. Donnelly v. City of Manchester, *supra*; see Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). In view of this result, we need not reach the question of whether fundamental rights are here involved which might trigger the stricter compelling-state-interest test. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); San Antonio Ind. School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Under either test, the residency requirement of the defendant school district exceeds the limit which the Equal Protection Clause places on government by classification. We emphasize, however, that this conclusion does not mean that a state may not in an "appropriately defined class of positions" require residency as a qualification for employment. Sugarman v. Dougall, *supra*, 634 U.S. at 647, 93 S.Ct. 2851, 37 L.Ed.2d 910.

---

* Of course, boundaries between school districts, counties, or other political subdivisions in the metropolitan Kansas City area are virtually imperceptible.

This memorandum and order shall constitute the Findings of Fact and Conclusions of Law required by Rule 52(a) of the Federal Rules of Civil Procedure.

It is ordered that defendants be enjoined from enforcing the residency requirement in question against the plaintiffs.