**J. D. WRIGHT et al.,
Plaintiffs-Appellants,**

v.

**The CITY OF JACKSON, MISSISSIP-
PI, et al., Defendants-Appellees.**

No. 74–1668.

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1975.

Russell X. Thompson, Memphis, Tenn., Danny E. Cupit, Jackson, Miss., Charles

C. Burch, Memphis, Tenn., for plaintiffs-appellants.

John E. Stone, City Atty., Jackson, Miss., for defendants-appellees.

Before COLEMAN, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

■ In March 1973 the Mayor and Board of Commissioners of the City of Jackson, Mississippi, passed an ordinance requiring all municipal employees qualified under the rules and regulations of the Civil Service Commission to maintain their domicile and principal place of residence within the corporate limits of the City during the period of their employment.[1] This suit was brought as a class

action by a group of nonresident firemen.[2] They challenge the constitutionality of the ordinance under the Fourteenth Amendment and under 42 U.S.C.A. § 1983. The firemen seek both declaratory and injunctive relief, alleging that the ordinance denies them their right to travel, their right to choose a residence, or, in the alternative, their right to employment, and is unconstitutional in the absence of any compelling governmental need. Without benefit of any hearing on the merits of the claim, the district court dismissed the case for failure to state a claim upon which relief could be granted and the firemen appeal. Since we can find no fundamental constitutional right to intrastate travel infringed by this ordinance, the City was not required to justify the ordinance under the compelling interest standard which must be met upon interference

1. The ordinance as passed on March 20, 1973, is recorded in Minute Book "3D" at page 494 and reads in pertinent part as follows:

AN ORDINANCE REQUIRING ALL CITY EMPLOYEES UNDER CIVIL SERVICE REGULATIONS TO MAINTAIN THEIR RESIDENCE WITHIN THE CITY OF JACKSON.

BE IT ORDAINED BY THE MAYOR AND COMMISSIONERS OF THE CITY OF JACKSON, MISSISSIPPI:

SECTION 1. All employees of the City of Jackson, Mississippi, qualified under the rules and regulations of the Civil Service Commission, shall maintain their domicile and principal place of residence within the corporate limits of said City during the period of their employment with the City.

SECTION 2. Any person affected by the terms of this Ordinance who does not now maintain his domicile and principal residence within the corporate limits of the City of Jackson, Mississippi, shall move his domicile and principal place of residence within the corporate limits of said City within a period of twelve (12) months from the date of this Ordinance; and in the absence of such compliance, said employee shall be immediately discharged and terminated in his employment with the City of Jackson, Mississippi.

SECTION 3. New employees of the City, employed under Civil Service, who do not maintain their domicile and principal place of residence within the City at the time of their employment, shall move their domicile and principal place of residence into the corporate limits of the City of

Jackson before the expiration of the first six months of the probationary period of the Civil Service rules and regulations or be dismissed from City employment.

SECTION 4. It is the purpose of this Ordinance to require all City employees qualified under Civil Service to, at all times during such employment, live and maintain their domicile and principal place of residence in the City of Jackson.

SECTION 5. Any City employee coming under the terms of this Ordinance and presently residing in an area in which the City is now involved by petition, resolution or legal action bearing on annexation or the opposition to incorporation is exempt from the provisions of this Ordinance until such time as the Court has finally determined whether or not the aforesaid area is or is not to be included in the boundaries of the City of Jackson, Mississippi. If the final determination shall be that the area in question is not to be a part of the City of Jackson, Mississippi, then the twelve (12) months grace designated in Section 2 shall commence on the date of final determination.

⋆ ⋆ ⋆ ⋆ ⋆

2. At the time of the passing of the ordinance there were seventy-two firemen employed by the City of Jackson coming within the rules and regulations of the Civil Service Commission who had already purchased homes outside of the corporate limits of the City. One-half of these men resided in areas proposed to be annexed by the City of Jackson and thus were subject to the exemption from the ordinance provided in section 5 thereof.

with a right to travel interstate. We, therefore, affirm the dismissal for failure to state a claim.

The firemen assert that the district court erred in dismissing the case without first requiring the City to show justification for the ordinance and to demonstrate that the ordinance was necessary to meet a compelling governmental interest. They argue that under the reasoning of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), the City must show a substantial and compelling reason for imposing residency requirements which interfere with the fundamental constitutional right to travel. At oral argument counsel for appellants conceded that these cases dealt with durational residency requirements and the right to *inter*state travel whereas the case *sub judice* involves a continual residency requirement and the right to *intra* state travel. He argued, however, that there is no logical distinction between interstate and intrastate travel and that the *Shapiro-Dunn* right to freedom of travel should also extend to intrastate travel and continuing residency requirements. We think that such application would substantially distort the principles of *Shapiro* and *Dunn*, and the reasons for those decisions.

*Shapiro* involved a requirement for the receipt of welfare payments that the applicant be a resident of the state for a year. The Court was very careful to make clear that the "residence requirement and the one-year waiting-period requirement are distinct and independent prerequisites for assistance." 394 U.S. at 636, 89 S.Ct. at 1332. Although it held the durational prerequisite unconstitutional, the Court emphasized that its holding did not invalidate bona fide continuing residence requirements. 394 U.S. at 638, n. 21, 89 S.Ct. at 1322. Later, the Court in *Dunn* invalidated a durational residency requirement for voter registration but noted that "[n]othing said today is meant to cast doubt on the validity of appropriately defined and uniformly applied bona fide residence requirements." 405 U.S. at 342, n. 13, 92 S.Ct. at 1003. *See also* Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). We agree with the Supreme Court of California's analysis in Ector v. City of Torrance, 10 Cal.3d 129, 109 Cal.Rptr. 849, 514 P.2d 433 (1973), cert. denied, 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974), that nothing in *Shapiro* or any of its progeny stands for the proposition that there is a fundamental constitutional "right to commute" which would cause the compelling governmental purpose test enunciated in *Shapiro* to apply. *Accord*, Abrahams v. Civil Service Commission, 65 N.J. 61, 319 A.2d 483 (1974). *Contra*, Krzewinski v. Kugler, 338 F.Supp. 492 (D.N.J.1972) (3-Judge court); Donnelly v. City of Manchester, 111 N.H. 50, 274 A.2d 789 (1971).

Any doubt that the "right to travel" rationale of *Shapiro* and *Dunn* was meant to apply to intrastate travel and municipal employment residency requirements was put to rest by the Supreme Court's treatment of litigation challenging a Detroit ordinance similar to the Jackson residency requirement. Detroit Police Officers Association v. City of Detroit, 385 Mich. 519, 190 N.W.2d 97 (1971). The Detroit ordinance was sustained by the Michigan Supreme Court on the traditional equal protection test that the classification bore a reasonable relationship to the object of the legislation. An appeal was taken to the United States Supreme Court which ordered that the case be "dismissed for want of a substantial federal question." 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972).

The Seventh Circuit recently considered the effect of this disposition in a case involving a challenge to a Chicago ordinance requiring policemen to reside within the city. Ahern v. Murphy, 457 F.2d 363 (7th Cir. 1972). They observed that such a dismissal for want of a substantial federal question

is a decision on the merits of the case appealed. Ohio ex rel. Eaton v. Price, 360 U.S. 246, 247, 79 S.Ct. 978, 3 L.Ed.2d 1200 (1959); Stern & Grossman, Supreme Court Practice (4th ed.

1969) 197. In fact, dismissal for want of a substantial federal question in a state court appeal is fully equivalent to affirmance on the merits in an appeal from a federal court insofar as the federal questions under 28 U.S.C. § 1257(1) and (2) are concerned.

457 F.2d at 364. They then held that the dismissal amounted to a decision on the merits by the Supreme Court that such a municipal employee residence requirement does not violate any provision of the federal Constitution and, with that precedent, affirmed the district court's dismissal of the Chicago complaint. The fact that both *Detroit Police Officers Association* and *Ahern* concerned residency requirements applicable to policemen does not distinguish them from this case dealing with firemen. The occupation of the individual challenging the regulation is not relevant in considering which equal protection test to apply, although it may be important in meeting the test on the facts of the case.

Plaintiffs place great reliance on Krzewinski v. Kugler, 338 F.Supp. 492 (D.N.J.1972) (3-Judge court), as authority for the view that municipal residence requirements should be tested by the strict compelling governmental purpose standard. In *Krzewinski* the court did just what plaintiffs say we should do in this case: it imposed upon the municipality the burden of demonstrating a compelling interest to justify the ordinance. The court there, after an evidentiary hearing, found such a compelling interest to exist where the residence requirement was applicable to police officers. In Donnelly v. City of Manchester, 111 N.H. 50, 274 A.2d 789 (1971), however, the New Hampshire court, imposing the compelling interest test, weighed the "reasonableness of a restriction upon private rights" against the "importance of the public benefit" and found a residency requirement applicable to school teachers invalid. These are the only two published cases to come to our attention which apply the compelling interest test in this situation. Both of these cases were decided before the Supreme Court's

dismissal of *Detroit Police Officers Association* and the decision in *Ahern*, and we reject them as persuasive precedents.

 Since we hold that a bona fide continual residency requirement challenged on equal protection grounds is not to be tested by the strict compelling governmental purpose standard, there was no need for the district court to hold an evidentiary hearing before approving the ordinance under the traditional rational basis test. See Ahern v. Murphy, 457 F.2d 363 (7th Cir. 1972). As plaintiffs have relied solely on the compelling interest test, no argument has been made here or in the trial court that the complaint states sufficient facts to invalidate the ordinance under the rationality test.

 In addition to the *Detroit Police Officers Association* case, *supra*, numerous other decisions since *Shapiro* have held that a municipal employee residence requirement bears a rational relationship to one or more legitimate state purposes, and hence is constitutional under the traditional equal protection test. See, e.g., Ector v. City of Torrance, 10 Cal.3d 129, 109 Cal.Rptr. 849, 514 P.2d 433 (1973), cert. denied, 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974) (librarian); Hattiesburg Firefighters Local 184 v. City of Hattiesburg, 263 So.2d 767 (Miss.1972); Abrahams v. Civil Service Commission, 65 N.J. 61, 319 A.2d 483 (1974) (secretary); Salt Lake City Firefighters Local 1645 v. Salt Lake City, 22 Utah 2d 115, 449 P.2d 239, cert. denied, 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969). *Contra*, Hanson v. Unified School District No. 500, 364 F.Supp. 330 (D.Kan. 1973) (school teachers). There are a number of rational interests in municipal public policy to justify such a requirement. In *Ector* the California Supreme Court listed those rational purposes advanced in various adjudicated cases:

Among the governmental purposes cited in these decisions or now urged by amici curiae are the promotion of ethnic balance in the community; reduction in high unemployment rates of inner-city minority groups; improvement of relations between such groups

and city employees; enhancement of the quality of employee performance by greater personal knowledge of the city's conditions and by a feeling of greater personal stake in the city's progress; diminution of absenteeism and tardiness among municipal personnel; ready availability of trained manpower in emergency situations; and the general economic benefits flowing from local expenditure of employees' salaries.

Ector v. City of Torrance, *supra*, 109 Cal. Rptr. at 852, 514 P.2d at 436. Like the court in *Ector* "[w]e cannot say that one or more of these goals is not a legitimate state purpose rationally promoted by the municipal employee residence requirement here in issue." *Id.*

In affirming the district court's dismissal, we, of course, take no position on the policy decisions involved in adopting a municipal residency requirement. We hold only that the City of Jackson may validly enact such a policy free of any federal constitutional restraint.

Affirmed.