COOK COUNTY COLLEGE TEACHERS UNION, LOCAL 1600, etc., et al., Plaintiffs,

v.

John W. TAYLOR et al., Defendants.

No. 76 C 3299.

United States District Court, N. D. Illinois, E. D.

Jan. 19, 1977.

---

Gilbert Feldman, Cornfeld & Feldman, Chicago, Ill., for plaintiffs.

George L. Siegel, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

The plaintiffs challenge by this action the imposition of a rule requiring employees of the City Colleges of Chicago (Community College District #508, County of Cook,

State of Illinois) to become residents of Chicago.

Briefly summarized, the rule, adopted on July 23, 1976, requires present employees to obtain residence within the city by July 1, 1980. It specifies that current employees will not be promoted to a position offering higher compensation unless the employee agrees to take up city residence within six months of appointment to the higher position. Newly hired employees must agree to move into the city within six months of employment.

The plaintiffs, the union and union officers representing the affected teachers, have brought a three-count action in this court. Counts I and II are federal civil rights claims brought under 42 U.S.C. § 1983.

Count I alleges that the rule deprives the teachers of equal protection under the laws. It emphasizes that the defendants, who are the members of the Board of Trustees for the City Colleges, have provided that only administrative employees shall receive a $3,000. annual allowance for moving into the city. The plaintiffs assert that the defendants have established an unreasonable classification of eligibility for the Chicago residency allowance. They further charge that the residency rule is devoid of a rational relationship to its stated purposes.

Count II, brought in behalf of tenured teachers, asserts that the residency rule imposes an ex *post facto* material qualification upon employment within the City College system. The plaintiffs maintain that the residency requirement is onerous and unreasonable, and thereby retroactively diminishes the property right of tenured teachers to expect continued employment. This is said to constitute a violation of due process.

Count III, the pendent claim, alleges that defendants violated the Open Meetings Act, Ill.Rev.Stat. ch. 102, § 41, by the manner in which they adopted the residency rule.

The defendants have moved to dismiss the complaint, and the parties have submitted extensive briefs to the court.

Although the parties have referred to numerous challenges to a variety of residency rules, and the plaintiffs have attempted to distinguish the bases of the respective challenges to their validity, the conclusion of the Supreme Court is unavoidable: "[w]e have . . . held that this kind of ordinance is not irrational." *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976). The order of the Court added, "In this case appellant claims a constitutional right to be employed by the city of Philadelphia while he is living elsewhere. There is no support in our cases for such claim."

Previously the Seventh Circuit has held that such rules satisfied the rational relationship test for equal protection, *Ahern v. Murphy,* 457 F.2d 363 (7th Cir. 1972), and the results have been similar in challenges to this type of rule in other courts: *Wardwell v. Board of Education,* 529 F.2d 625 (6th Cir. 1976); *Wright v. City of Jackson, Mississippi,* 506 F.2d 900 (5th Cir. 1975); *Pittsburgh Federation of Teachers v. Aaron,* 417 F.Supp. 94 (W.D.Pa.1976); *Manion v. Kreml,* 131 Ill.App.2d 374, 264 N.E.2d 842 (1st Dist. 1970); *Detroit Police Officers Ass'n. v. City of Detroit,* 385 Mich. 519, 190 N.W.2d 97 (1971), appeal dismissed for want of substantial federal question, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972); *Kennedy v. City of Newark,* 29 N.J. 178, 148 A.2d 473 (1959).

The court is not impressed by the attempted distinction that the claim advanced in most of the above cases concerned the right to interstate travel, whereas the instant claim alleges a different type of constitutional concern, and also asserts that the rule deprives the plaintiffs of property rights without due process. The complaint does not raise any claim which requires the court to subject the rule to "strict scrutiny" or to utilize a test balancing the justification for the rule against the detriment suffered by these plaintiffs.

■ The Supreme Court has stated that an ordinance with similar residency requirements satisfies the rational relationship

test. The articulated reasons for the rule, which include a belief that Chicago residents are more likely to understand the urban problems (racial, social and economic) faced by their students, and the expectation that the taxes and expenditures of employees residing in Chicago will contribute to the support of the City Colleges, closely resemble the reasons found by other courts to provide rational bases for residency rules. *E. g., Wardwell v. Board of Education, supra.* The rational relationship test is clearly satisfied, both for the equal protection and the due process claims.

The plaintiffs seek to present evidence that the reasoning of the defendants is not well founded. They assert that they can show that the benefit to the City Colleges coming from the encompassing of the plaintiffs within the city tax base will be marginal and minimal. Such an argument persuaded the court in *Donnelly v. Manchester,* 111 N.H. 50, 274 A.2d 789 (1971). They also hope to show that the diversity of Chicago communities and residential styles makes it unlikely that mere residency in the city will generate greater teacher-student understanding.

The plaintiffs also desire to introduce evidence which would reveal the extent of the hardship which would be caused by the uprooting of the 40% of the city college teachers presently residing outside of the city limits.

■ The short response to this is that the Constitution is not violated so long as a law is not premised upon a patently irrational basis. "Judicial inquiry does not concern itself with the accuracy of the legislative finding, but only with the question of whether it so lacks any reasonable basis as to be arbitrary." *Borden's Co. v. Ten Eyck,* 297 U.S. 251, 263, 56 S.Ct. 453, 456, 80 L.Ed. 669 (1936).

It may be that the residency rule promulgated by the defendants is unduly optimistic as to the efficacy of Chicago residency.

It may be that this rule is harsh and onerous upon non-resident teachers. It may also be true that the Board could have devised a better rule to achieve its goals, or one "more just and humane". But so long as it has been held that the reasons advanced are not utterly irrational, the rule cannot be held invalid. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Williams v. Civil Service Commission of City of Detroit,* 383 Mich. 507, 176 N.W.2d 593 (1970). In light of the holding of the Supreme Court in *McCarthy,* there is no basis for any further hearing on the issue of rationality.[1]

It is therefore not necessary for the court to consider in detail the many sub-arguments raised by the briefs. However, certain findings of law do further sustain the conclusion that this complaint fails to state a claim for relief.

■ The provision of a $3,000. annual allowance to administrators but not to teachers is not violative of the current conception of equal protection. Apparently the Board views this as a necessary inducement to its top administrators to move into the city as soon as possible. The plaintiffs see it as a hardship allowance which is denied to non-administrators. The allowance cannot be strictly viewed as a mere inducement to move to the city since it applies to those currently living in the city as well. But it may be fairly characterized as an inducement to move to the city and to retain Chicago residency limited to a favored and especially valued class of employees. This allowance may also reflect a belief that residency within the city is in fact a burden which should be offset by material compensation.

■ Perhaps it would have been preferable and more just to have extended such benefits to all employees of the City Colleges, or particularly to those who must

---

1. Both of the cases upon which the plaintiffs rely for the principle that they are entitled to a hearing on the rationality of a residency rule were decided prior to *McCarthy. Donnelly v.* *City of Manchester, supra,* and *Hanson v. Unified School District,* 364 F.Supp. 330 (D.Kan. 1973).

attempt relocation on less substantial base levels of compensation. But a public employer is allowed to create distinct classes of employees and treat them differently for compensation purposes. *Phelps v. Board of Education,* 300 U.S. 319, 57 S.Ct. 483, 81 L.Ed. 674 (1937). And it is not violative of equal protection for the state to utilize its limited funds by the establishment of imperfect classifications which may deal with a problem in an underinclusive fashion. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Since the establishment of separate categories of teachers and administrators is not founded on an invidious basis which compels strict scrutiny, it cannot be said that the instant scheme deprives the plaintiffs of equal protection.

 The court recognizes that tenured teachers have certain property rights in their positions which are guaranteed by the requirement of due process. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, the rule is essentially an operational regulation for the governance of the system, rather than an employment qualification. *Manion v. Kreml, supra.* Nor is it an *ex post facto* rule which retroactively curbs the tenure rights of teachers. Such a rule is prospective in operation, and limits the current employment rights of only those who fail to relocate within four years.[2]

The plaintiffs argue with some correctness that this rule imposes an additional requirement for the retention of employment within the city college system. But every regulation adopted by a public employer in some way modifies the previous conditions of employment. And wilful violation of any new rule may provide cause

for dismissal under both the principles of tenure and the current contract.

As long as the new regulation does not render it impossible for tenured employees to comply and retain employment, it cannot be said to deprive them of any property right.[3] They retain their due process rights to discharge only upon cause found after a hearing, but are not sheltered from attempts by the defendants to alter or modify the operations of the city college system.

 The court finds that the plaintiffs have failed to state a claim under the Constitution and § 1983 against the validity of the challenged residency rule. Accordingly, Counts I and II of the instant complaint must be dismissed, and Count III must fall for want of pendent jurisdiction. The motion of the defendants to dismiss the instant complaint is therefore granted, and the instant cause is ordered dismissed.

---

**2.** It is argued that the six month rule also affects those teachers seeking promotions, and thus limits their tenure rights as established by the current contract with the city college system. But the teachers do not have any property right in promotions to another position with higher pay. Furthermore, as noted, *infra,* this rule does not infringe upon the guarantees of tenure.

**3.** The instant regulation can be contrasted with a hypothetical new rule which would limit teaching positions exclusively to individuals with 20/20 uncorrected eyesight. While a tenured teacher can move within the city and comply with the challenged rule, the hypothetical rule could not be satisfied by a tenured teacher with less than perfect eyesight. The latter would have a retroactive, *ex post facto* effect and would undermine the property interest in a tenured position.