Daniel LORENZ, James Ponteau, George Bracey and Gilbert Burton

v.

Frank LOGUE, Edward U. Morro, Kennedy Mitchell, Jay E. Bove, Jonathan Einhorn, Vanessa Burns, Peter H. Feriola, Vincent C. Mauro, and the City of New Haven.

Civ. No. N–79–122.

United States District Court, D. Connecticut.

June 27, 1979.

Jackson T. King, Farren & King, New Haven, Conn., for plaintiffs.

Frederick W. Danforth, Jr., Deputy Corp. Counsel, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

ELLEN BREE BURNS, District Judge.

Plaintiffs, all members of the Department of Police Services of the City of New Haven and all residing outside the limits of said city, have brought this action under 42 U.S.C. § 1983 and seek declaratory and injunctive relief, claiming deprivation of their rights secured by Article I, Section 10, and the Fourteenth Amendment of the Constitution of the United States by the application to them of an ordinance of the city of New Haven requiring them to establish residence in that city. The plaintiffs have moved for a preliminary injunction, enjoining the defendants from taking any adverse action against them, on which motion an evidentiary hearing was held. Defendants have moved for dismissal of the complaint for failure to state a claim upon which relief can be granted and for failure to demonstrate the jurisdiction of the court over the subject matter.

The ordinance, which became effective on January 1, 1978, requires all city employees hired after that date to reside within the city as a condition of employment and allows any such person who is a nonresident at the time of hiring to continue in employment if he or she moves his or her residence into the city within six months after becoming a permanent employee. The ordinance also provides that those persons hired prior to January 1, 1978, must reside in the Greater New Haven Area (defined as New Haven and the cities and towns contiguous thereto) except that any such employee in a bargaining unit position who is appointed, transferred or promoted outside of his bargaining unit and any such employee not in a bargaining unit position who is appointed, transferred or promoted to any high pay position, as defined in the ordinance, shall be thereafter required to maintain his residence in the city.[1] The ordinance also establishes a Residency Review Board which is authorized to "grant waivers in cases of Extreme Hardship . . . which may exempt or abate, permanently or temporarily, the operation of this ordinance with respect to municipal employees. Extreme Hardship shall be any extraordinary burden imposed on a municipal employee by this ordinance, either financial or otherwise, which causes serious harm to him or her immediate family." [sic]

The plaintiffs, all of whom were members of The New Haven Housing Authority police department on October 30, 1978, on which date the housing authority police service was abolished, were offered the opportunity to, and did, become regular members of the city police department thereafter. They have all been notified that they must remove their residences to New Haven not later than fixed dates or be terminated.

The plaintiffs contend the ordinance imposes an unconstitutional burden on and impairment of their right to travel freely, both interstate and intrastate, and on their right to live and work where they choose and that it discriminates between them and a few other city employees on the one hand and the "vast majority" of city employees on the other, depriving them of the equal protection of the laws in violation of the Fourteenth Amendment; that the requirement that employees seeking waiver show "extreme hardship" is unconstitutionally vague on its face and as applied to the plaintiffs in violation of the Fourteenth Amendment; that the ordinance deprives plaintiffs of their right to continue to reside in their homes without due process of law in violation of the Fourteenth Amendment and that it imposes an obligation on the plaintiffs which fundamentally alters the terms of their employment with the city and impairs the obligations of the city's contracts with the plaintiffs in violation of Article I, Section 10, of the United States Constitution. With respect to this last claim, plaintiffs alleged no facts and offered no evidence in support thereof nor did they brief any argument thereon. Accordingly, the court will treat that claim as abandoned.

The court, in considering the equal protection claims of plaintiffs, is required first to determine the applicable standard to be applied to the requirement imposed by the ordinance, a determination made by looking to the nature of the classification and the individual interest affected. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 253, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1973). Equal protection analysis of such legislation requires strict scrutiny where a classification therein impermissibly interferes with the exercise of a fundamental

1. An ordinance of the city of New Haven adopted in 1966 had permitted city employees to reside in the Greater New Haven Area, defined as New Haven and those towns and cities contiguous thereto, but permitted those employees residing beyond this area to continue to so reside except that, on a change of residence, residence in the Greater New Haven Area would be required. The new ordinance provides that with respect to employees hired before January 1, 1978, it shall be construed as an incorporation and continuation of the provisions of the prior ordinance and as imposing no condition not in effect with respect to them as of December 31, 1977.

right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1975); *San Antonio School District v. Rodriguez,* 411 U.S. 1, 16, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

Plaintiffs here claim first that the residency requirement imposes an unconstitutional burden on their fundamental right to travel freely, both interstate and intrastate. The Supreme Court, in considering durational residency requirements imposed by statute in varying contexts, has made clear that such requirements do unconstitutionally infringe on a fundamental right of interstate travel. *Memorial Hospital v. Maricopa County, supra* (eligibility for nonemergency hospital or medical care at county expense); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1971) (prerequisite for registration to vote); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (eligibility for welfare assistance). The Second Circuit has extended this concept to the right to intrastate travel as well. *King v. New Rochelle Municipal Housing Authority,* 442 F.2d 646 (1971), *cert. den.* 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (requirement for admission to public housing). Where such fundamental rights are involved, such a requirement can be upheld only if it furthers a compelling state interest. However, the Supreme Court has also made it clear that a durational residency requirement and not a continuing residency requirement was at issue in *Shapiro* and *Dunn* and that this was a distinction with a significant difference. *Memorial Hospital, supra,* 415 U.S. at 255, 94 S.Ct. 1076. The same kind of durational residency requirement was at issue in *King.* Each of the cited cases involved differing treatment of *residents* with respect to the benefit sought—the rights of nonresidents were not involved—and the durational requirement in effect penalized new residents for their recent exercise of their right to travel. The court's interest was in "insuring *new residents* the same right to vital government benefits and privileges in the States *to which they migrate* as are enjoyed by *other residents."* *Memorial Hospital, supra,* at 261, 94 S.Ct. at 1084 (Emphasis supplied).

The rationale that the constitutional right of interstate or intrastate migration is penalized by a durational residency requirement has no applicability to a situation requiring present and continuing residency as a condition of employment. Indeed, in *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1975) the Supreme Court upheld a regulation of the city of Philadelphia requiring city employees to be city residents, finding the regulation to be a bona fide continuing residency requirement which did not violate the interstate right to travel of the appellant whose employment had been terminated when he moved his residence from Philadelphia to New Jersey. The court further stated "[n]either in [*Shapiro, Dunn* and *Memorial*] nor in any [other cases] have we questioned the validity of a condition placed upon municipal employment that a person be a resident *at the time* of his application. In this case appellant claims a constitutional right to be employed by the city of Philadelphia *while* he is living elsewhere. There is no support in our cases for such a claim." *McCarthy* at 646–647, 96 S.Ct. at 1155. This court finds that the continuing residency requirement of the New Haven ordinance does not infringe upon any constitutional right to travel of plaintiffs and that there is no constitutional right to municipal employment for those persons who elect to maintain their residences outside the employing municipality. *McCarthy, supra; Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 313, 96 S.Ct. 2562.

This being so the equal protection analysis of the court is directed first to whether there is a rational basis for the adoption by the city of an employment policy which discriminates against nonresidents. This rational relationship test has been specifically applied to an equal protection challenge to a statute affecting the availability of governmental employment.

*Kotch v. Board of River Port Pilot Commissioners*, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1946). And a residency requirement imposed on police officers has been held not irrational and not violative of the Equal Protection Clause in *Detroit Police Officers Association v. City of Detroit*, 385 Mich. 519, 190 N.W.2d 97 (1971), appeal dismissed for want of a substantial federal question, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972).[2]

This court then must consider "the nature of the unequal classification under attack, the nature of the rights adversely affected, and the governmental interest urged in support of it . . . If the classification, upon review of facts bearing upon the foregoing relevant factors, is shown to have a substantial relationship to a lawful objective and is not void for other reasons, such as overbreadth, it will be upheld," *Boraas v. Village of Belle Terre*, 476 F.2d 806, 814 (2d Cir. 1973), even if, in practice, it results in some inequality. *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Section 1(a) of the New Haven ordinance sets forth as the basis for its employment policy a legislative finding that the city suffers from a declining tax base, excessively high unemployment and deterioration of its neighborhoods; that the problems of economic decline and residential instability are significantly related to a trend among persons whose means of income are situated in New Haven to reside outside the city; that the city is a major employer and the municipal payroll constitutes an important source of tax generating revenue and job-creating income; that city payroll funds are used more effectively if paid to employees residing within the city because tax dollars are returned to their source in that those employees pay city taxes and spend more of their earnings within the city than nonresidents; that emergency situations may require officers and employees to be near their places of employment, and that em-

ployees in policy-making positions may gain greater understanding of the complexities of city problems if they reside therein. The court, in considering such a legislative finding, is concerned, not with the accuracy thereof, but only with whether it so lacks a reasonable basis as to be arbitrary. *Borden's Co. v. Ten Eyck*, 297 U.S. 251, 263, 56 S.Ct. 453, 80 L.Ed. 669 (1936).

 There seems no question that the payment of taxes and maintenance of fiscal integrity are reasonably related to the legitimate objectives of a city which imposes residency requirements for the enjoyment of a governmental benefit where fundamental rights are not at stake. See, for example, *Kirk v. Board of Regents of the University of California*, 273 Cal.App.2d 430, 78 Cal.Rptr. 260 (1969), appeal dismissed for want of a substantial federal question, 396 U.S. 554, 90 S.Ct. 754, 24 L.Ed.2d 747 (1970).[3] That serious problems with respect to finance and deteriorating neighborhoods are endemic in municipalities throughout the country is common knowledge and certainly an appropriate area for legislative concern. This court cannot substitute its judgment for that of the legislative body of the city of New Haven in its decision to maximize the return on city expenditures by imposing a residency requirement on its own employees with a view to returning payroll dollars to the city directly through taxes and indirectly through stimulating local businesses. The residency requirement imposed on employees of the city of New Haven bears a rational relationship to those legitimate objectives of the ordinance and is not a denial of equal protection.

Plaintiffs, however, claim that, even if the requirement of residency in itself is not constitutionally offensive, the New Haven ordinance is defective in its discrimination between classes of employees, to only a relative few of whom the ordinance applies.

---

2. Such a dismissal is considered a decision on the merits. *Port Authority Bondholders Protective Committee v. Port of New York Authority*, 387 F.2d 259, 262 (2nd Cir. 1967).

3. See fn. 2, supra.

A similar argument was made in *Wardwell v. Board of Education of the City School District of Cincinnati*, 529 F.2d 625 (6th Cir. 1976) which was concerned with a constitutional challenge to a Board of Education rule imposing a residency requirement on teachers hired after a fixed date and exempting teachers hired prior to that date. The court refused to invalidate the rule, citing *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) and *Dandridge v. Williams, supra*, for the proposition that there is no constitutional requirement for a regulation to cover every class to which it might have been made applicable as long as the classification has a reasonable basis. Legislatures are presumed to have acted constitutionally; they may proceed "one step at a time" to address a problem and their statutory classifications will be set aside only if no grounds can be conceived to justify them. *McDonald v. Board of Election*, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1968).

Defendants here persuasively argue that the classifications of the ordinance are rational as follows: All persons employed after January 1, 1978, are subject to the residency requirement. Those persons employed prior to January 1, 1978, are excepted from the requirement except that those thereafter appointed, transferred or promoted (1) from a bargaining unit position to a position outside of that bargaining unit or (2) from a non-bargaining unit position to a high pay position shall, after such appointment, transfer or promotion, be deemed new employees and subject to the residency requirement. The justification for these exemptions is that residency requirements, being a condition of employment, are subject to collective bargaining under Sections 7-467 et seq. of the Connecticut General Statutes and cannot legally be imposed on those already employed in bargaining unit positions.[4] In the interest of maintaining employee morale and "to foster a perception of fairness on the part of employees

and the public" it is reasonable similarly to except non-bargaining unit employees. Those employees, however, who move into high pay positions are then subject to the ordinance because "[u]pper level municipal employees in supervisory positions who exercise important policymaking responsibilities which greatly affect the welfare of the city of New Haven may gain greater understanding of the complexities of city problems" by residing therein. § 1(a)(6) of the ordinance. In sum, the result of the classifications imposed by the ordinance is that the status quo of each person in city employment prior to its effective date remains the same until such employee is placed in a new position.

█ The New Haven ordinance is designed ultimately to include all of its employees, not excluded by provisions of state law, within the residency mandate. It has chosen the least disruptive and most humane manner in which to accomplish this end by limiting its operations to prospective application. Although the classifications made by the ordinance may appear presently to result in some inequity, they have a reasonable basis rationally related to the role of the city as employer and involve no impermissible criteria.

█ Plaintiffs finally claim the hardship waiver provision of the ordinance is unconstitutionally vague on its face and as applied to them. None of the plaintiffs has alleged that he applied for such a waiver and that his application was denied. Furthermore, even were the court to agree with the claim that the provision is unconstitutionally vague on its face, Section 1(*o*) of the ordinance provides for severability of any part of the ordinance found to be unconstitutional, leaving the remainder of the ordinance in full force and effect. Such a clause is not conclusive but creates a presumption of separability which must be overcome by proof of considerations making inseparability evident. 2 Sutherland, Stat-

---

4. The police and firefighters unions of the city of New Haven which had filed prohibited practice complaints against the city on the residen-

cy issue (Case MPP-3599; Case MPP-3600) entered into a stipulation accepting these provisions of the ordinance.

utory Construction (3d Ed.) 182–185. No such proof is suggested here and the court concludes that the other provisions of the ordinance are in no way dependent upon the validity of the waiver provisions and are clearly severable.

Plaintiffs' remaining claim that they, as New Haven Housing Authority Police Officers, were municipal employees of the municipal government of New Haven prior to January 1, 1978, involves no federal claim. It does involve application of the ordinance and interpretation of its terms and of provisions of the Connecticut General Statutes, state law questions over which this court, having found no federal question, declines to take jurisdiction.

Accordingly, the defendants' Motion to Dismiss is granted.

SO ORDERED.