**Dawn FAYERWEATHER and Doug Andrew, Plaintiffs,**

v.

**TOWN OF NARRAGANSETT HOUSING AUTHORITY, Defendant.**

**C.A. No. 92–0417L.**

United States District Court, D. Rhode Island.

March 31, 1994.

John Rao and Regina A. Wagner, Rhode Island Legal Services, Inc., Peace Dale, RI, for plaintiffs.

James H. Reilly, III, Kelly, Kelleher, Reilly & Simpson, Providence, RI, for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court for decision on an agreed statement of facts. Plaintiffs challenge the legality of the Narragansett Housing Authority's use of a local residency preference in allocating housing subsidies. It is their contention that this preference policy violates the National Housing Act and its accompanying regulations as well as the Fourteenth Amendment to the United States Constitution. They seek damages for the months during which they were denied housing assistance due to the application of this preference policy.

## BACKGROUND

The pertinent facts as stipulated by the parties are as follows.

Defendant, Narragansett Housing Authority, is a public housing authority under the auspices of 42 U.S.C. § 1437f. Title II of the Housing and Community Development Act of 1974, Pub.L. No. 93–383, 88 Stat. 633 (1974), created a housing assistance program popularly known as Section 8. Its purpose is to aid lower-income families in obtaining adequate and affordable housing by subsidizing their rent in the private market. Since the financial resources available to each local housing authority are finite, the Section 8 housing program makes provision for determining the order of allocation of the subsidies to families waiting for housing. These provisions are called preferences. There are federal preferences, which are created by federal statute, and non-federal preferences, which are created by the housing authority pursuant to the regulations contained in 24 C.F.R. § 882.209(a)(3), (4). The priority of those individuals on the waiting list is based on preferences. In Narragansett, those with federal preferences are given top priority. These individuals are then subcategorized—those with a local preference are placed ahead of those without a local preference. Each subcategory is then sorted based on the date of application.

At issue in this lawsuit is one of the defendant's preferences. It states, "Families who are made eligible for a preference by local regulations include: (1) persons who are currently residing in the Town, or are expected to reside through virtue of employment." This "local residence" preference is permitted under the federal regulations as long as the length of time the applicant has resided in the jurisdiction is not used as a basis for the preference. 24 C.F.R. § 882.209(a)(4).

The defendant maintains separate waiting lists, actually sub-lists of the main list, for local and non-local applicants with available certificates and vouchers first offered to those persons on the local list who also have a federal preference. Only when the feder-

al/local list for a particular sized unit is exhausted are certificates offered to persons on the federal/non-local list. If an applicant with a local preference later moves out of Narragansett before a certificate or voucher is received, the defendant removes the applicant's local preference and transfers the applicant to the non-local waiting list. The applicant's position on the non-local waiting list is based on the original date of application and not on the date of transfer. Similarly, an applicant would be moved to the local waiting list if he or she moved to the town after applying. Such an applicant's original application date would apply.[1]

Plaintiff Fayerweather applied for rental assistance in February of 1991. At that time, she was a resident of Narragansett; accordingly, she received the local preference. She also qualified for a federal preference. During the summer of 1991, she terminated her lease agreement in Narragansett because her roommate moved and she could not afford the entire rent herself. In the fall of that year, she moved to Cranston; being informed of the move, the defendant removed her local preference and transferred her to the non-local list. Had plaintiff Fayerweather remained on the local list, she would have received a Section 8 certificate in April, 1992. Because she was transferred to the non-local list, she did not receive a certificate until October of 1992.

Plaintiff Andrew applied for housing assistance in August of 1991. At that time he had been a resident of Narragansett for approximately ten years and qualified for both the local and a federal preference. In the fall of 1991, his landlord decided to renovate the building which contained his apartment.

Plaintiff Andrew then moved to North Kingstown, Rhode Island and informed the defendant of his relocation. Upon being informed of the move, the defendant removed his local preference and transferred him to the non-local list. When plaintiff Andrew returned to Narragansett in March of 1993, the defendant transferred him back to the local list based on his original filing date. Had plaintiff Andrew remained on the local list for the entire waiting period, he would have received a Section 8 certificate in February, 1992. Because he was transferred to the non-local list for a time, he did not receive a certificate until April of 1993.

Plaintiffs make two contentions in support of their respective claims. First, they argue that the defendant's preference policy violated the Fourteenth Amendment to the United States Constitution in that it impinged on their right to travel and thus denied them equal protection of the laws. Second, they argue that the defendant's preference policy contradicts federal law and regulations.

The parties submitted a stipulation of agreed facts and arguments were heard on September 9, 1993. The matter is now in order for decision.

## EQUAL PROTECTION CLAIM

At the heart of the Fourteenth Amendment protection of the right to interstate travel[2] is the distinction between a durational residency requirement and a bona fide residency requirement. A durational residency requirement is a condition on a public benefit where the availability or level of the benefit is based on the length of time that the individual has lived within the given

---

1. On June 1, 1993, in response to issues raised in this lawsuit, the defendant adopted a resolution "further clarifying" its policy and procedures with regard to applicants who are originally eligible for a local preference and thereafter move out of Narragansett. The resolution creates a procedure whereby residents of Narragansett who are on the local preference list, who are displaced due to circumstances beyond their control, and who cannot find equivalent housing in Narragansett, will remain on the local list after they have relocated elsewhere.

   Normally this change in the law would make the present suit moot. However, since each plaintiff is seeking monetary damages, the Court must examine the former policy to determine if it was illegal and if so, whether plaintiffs are entitled to damages. *See Powell v. McCormack*, 395 U.S. 486, 497–500, 89 S.Ct. 1944, 1952–53, 23 L.Ed.2d 491 (1969).

   Aside from this footnote, any reference to the preference policies of the defendant denotes the policies that were in effect before the June 1, 1993 amendment.

2. The First Circuit has applied the principles of the fundamental right to interstate travel to *intra*-state travel as well. *See Cole v. Housing Authority*, 435 F.2d 807 (1st Cir.1970).

**22**

political entity (*e.g.* town, county, or state). *See Andre v. Board of Trustees,* 561 F.2d 48, 52 (7th Cir.1977); *see also McCarthy v. Philadelphia Civil Service Comm'n,* 424 U.S. 645, 647, 96 S.Ct. 1154, 1155, 47 L.Ed.2d 366 (1976); *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 255, 94 S.Ct. 1076, 1080–81, 39 L.Ed.2d 306 (1974) (Statute requiring a one year waiting period before an indigent could receive non-emergency medical care at· county expense was a durational residency requirement). On the other hand, a bona fide residency requirement is one that only requires that an individual live within a given political entity without regard to the length of time that the individual has resided there. *See Andre,* 561 F.2d at 52–53. When reviewing the constitutionality of a regulation, courts have held that a durational residency requirement affects the fundamental right to travel and, thus, is accorded a strict level of scrutiny. *Andre,* 561 F.2d at 52; *see Shapiro v. Thompson,* 394 U.S. 618, 637, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1969). On the other hand, bona fide residency requirements have been held not to affect any fundamental rights, thus, they need only be rationally related to a legitimate governmental interest, *Martinez v. Bynum,* 461 U.S. 321, 328 n. 7, 103 S.Ct. 1838, 1842–43 n. 7, 75 L.Ed.2d 879 (1983); *see Lorenz v. Logue,* 481 F.Supp. 173, 176–77 (D.Conn.1979).

■ The Court determines that the defendant's preference policy is a bona fide residency requirement in this case. Upon moving to the town[3], an applicant · is treated identically to a long time inhabitant. As the Supreme Court stated in *Memorial Hospital,* "the right of interstate travel must be seen as insuring new residents the same right to vital Government benefits and privileges ... as are enjoyed by other residents." 415 U.S. at 261, 94 S.Ct. at 1084. Plaintiffs urge this Court to interpret the local preference as a requirement that inhibits individuals from moving *out* of Narragansett, thus restricting their freedom to travel. The residency preference, however, is only a continuing residency requirement. The Supreme Court has held that such a restriction does not involve the protected right to travel and, therefore, it is not entitled to heightened scrutiny. *McCarthy,* 424 U.S. 645, 96 S.Ct. 1154 (Requirement that fire fighters live in city not a violation of right to interstate travel); *Martinez,* 461 U.S. 321, 103 S.Ct. 1838 (Statute allowing the school district to deny free public education to minors who live in the district apart from their parents for the purpose of attending free public schools was a bona fide residency requirement that did not violate right to interstate travel.).

■ Since the local preference does not affect a fundamental constitutional right, the appropriate standard of review is the rational relationship test. *Cole,* 425 F.2d at 809 (1st Cir.1970). Under that test, if a classification bears a mere "rational relationship" to a legitimate state purpose, the constitutional requirement will be satisfied. *See Zobel v. Williams,* 457 U.S. 55, 60, 102 S.Ct. 2309, 2312–13, 72 L.Ed.2d 672 (1982). In this case, the town has a legitimate interest in taking the responsibility for providing housing for its own residents before aiding the residents of other communities. The local residency preference helps achieve that goal and, therefore, is rationally related to it. Accordingly, the Court concludes that the regulation does not violate the equal protection clause in the Fourteenth Amendment to the United States Constitution.

### STATUTORY GROUNDS

Plaintiffs also argue that the defendant's preference policy violates the National Housing Act as well as the regulations of the Department of Housing and Urban Development ("HUD"). Congress has delegated to HUD the authority to promulgate regulations to implement the Section 8 program. 42 U.S.C. § 1437f(g); 24 C.F.R. 882.101(a). These regulations have the force and effect of law, violation of which may be remedied by the federal courts. *Chrysler Corp. v. Brown,* 441 U.S. 281, 295–96, 99 S.Ct. 1705, 1714–15, 60 L.Ed.2d 208 (1979).

---

**3.** The town also gives the local preference to those individuals who expect to reside in the town due to employment.

Plaintiffs' first argument in support of this position is that the federal regulations prohibit the defendant's residency preference because it is based on duration. The regulations specifically allow for a bona fide residency preference:

The P[ublic ]H[ousing ]A[uthority] may establish selection preferences for applicants living in the area where the PHA determines that it is not legally barred from entering into Contracts. However, preferences may not be based upon the length of time in the jurisdiction. Applicants who are working or who have been notified that they are hired to work in the jurisdictions shall be treated as residents of the jurisdiction.

24 C.F.R. § 882.209(a)(4)(i). As can be clearly seen from the text, the regulation bars durational requirements. As was discussed in the previous section, the defendant's local preference policy is not a durational requirement.

Next, plaintiffs argue that recent amendments to the statutory scheme indicate a Congressional preference contrary to the defendant's policy. In 1992 Congress enacted the Housing and Community Development Act of 1992, Pub.L. No. 102–550, 106 Stat. 3672 (1992). Part of this legislation included portability requirements which dictate that, "any family not living within the jurisdiction of a public housing agency at the time that such family applies for assistance from such agency" shall be required to use the rental assistance within the agency's jurisdiction for an initial twelve month period. 42 U.S.C. § 1437f(r)(1). It is plaintiffs' contention that because Congress based its portability restriction on the residence of the applicant at the time of application then any time residency is used as a factor it must be based on residency at the time of application. Plaintiffs' argument is not convincing. Had Congress meant to make such a broad definitional change, it clearly would have done so in an open and obvious manner and given some indication as to its comprehensive scope.

Finally, plaintiffs argue that the defendant's policy frustrates the purpose of the Housing Act. They argue that the local preference policy frustrates rather than aids the implementation of the Act. This argument is without merit. The defendant's policy in no way hinders Congress' purpose of "provid[ing] a decent home and suitable living environment for every American family that lacks the financial means of providing such a home without government aid." *Thorpe v. Housing Authority,* 393 U.S. 268, 281, 89 S.Ct. 518, 525–26, 21 L.Ed.2d 474 (1969). The defendant's policy merely sets forth a procedure for determining the order in which housing subsidies are received. The policy has absolutely no effect on the amount or the quality of assistance given by the Housing Authority. Finally, it should be noted that the entire administrative plan of the Narragansett Housing Authority, including the preference provisions, were approved by HUD on July 18, 1991. This is a clear indicator that the defendant has complied with all aspects of federal law.

### CONCLUSION

The defendant's former local preference policy did not violate the Fourteenth Amendment to the United States Constitution, the National Housing Act, or the applicable HUD regulations. Therefore, plaintiffs have no viable claims in this case. Accordingly, the Clerk shall enter judgement for the defendant forthwith.

It is so ordered.