EUGENE MANION *et al.*, Plaintiffs-Appellants, *v.* FRANKLIN M. KREML *et al.*, Defendants-Appellees.

(No. 54169;

First District—October 27, 1970.

Baum, Glick & Associates, of Chicago, (Arthur W. Baum, of counsel,) for appellants.

Raymond F. Simon, Corporation Counsel, of Chicago, (Marvin E. Aspen and Richard F. Friedman, Assistants Corporation Counsel, of counsel,) for appellees.

Mr. PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Eugene Manion, a Chicago police officer, brought this action for declaratory judgment and injunctive relief, seeking a decree declaring void an ordinance of the City of Chicago and a rule of its Police Board, requiring Chicago patrolmen to be residents of Chicago, and an injunction restraining defendants from enforcing such ordinance and rule. Judgment was entered for defendants on the pleadings. This appeal is from that judgment.

Essentially, plaintiff's argument is that the Civil Service Commission alone is entitled to enact a residence requirement for Chicago patrolmen, and that it has not done so. It is plaintiffs' view that the Chicago ordinance and Police Board rule requiring Chicago police officers to reside in Chicago are void because those agencies are not authorized to promulgate such rules. The City's response is that regardless of the rule of the Civil Service commission, the Chicago ordinance and Police Board rule are valid and binding.

The City of Chicago has enacted an ordinance which requires residence in Chicago of all its police officers, and the Police Board has adopted a rule having the same requirement. We find the Police Board rule to be valid, and there is no point in considering whether the Civil Service Commission is authorized to enact, or has enacted such a requirement.

We note, however, that the Civil Service Commission has the power to require that those seeking to take the examination must be residents of the City. Ill. Rev. Stat. 1967, ch. 24, § 10—1—7 provides in part:

"All applicants for offices or places in the classified service, * * * shall be subject to examination, * * *˙ with specified limitations as to residence, * * *"

Pursuant to this authority, Commission Rule II, § 3 provides:

"No person shall be admitted to examination for any position in the classified service who has not been an actual resident of the City of Chicago for at least 1 year preceding date of examination; * * *" The Rule further provides that the Commission can waive such requirement by entering an order to that effect.

The plaintiffs attempt to persuade this court that the authority of the Commission to create a residence requirement is an exclusive power. This conclusion is based on the notion that the residency requirement is an employment qualification and that the Commission has exclusive authority over such qualifications and grounds for removal of police officers. The enabling statute [Ill. Rev. Stat. 1967, ch. 24, § 10—1—3] which empowers the Civil Service Commission to classify positions, provides in pertinent part:

"The commissioners shall classify all the offices and places of employment in such municipality with reference to the examinations hereinafter provided for, * * * The offices and places so classified by the commission shall constitute the classified civil service of such municipality. No appointments to any of such offices or places shall be made except under and according to the rules hereinafter mentioned."

Section 10—1—5 authorizes the Commission to promulgate rules to carry out its duties by providing:

"The commission shall make rules to carry out the purposes of this Division 1, and for examinations, appointments and removals in accordance with its provisions, and the commission may, from time to time, make changes in the original rules."

The statute which empowers the Police Board to make its rules is found in Ill. Rev. Stat. 1967, ch. 24, § 3—7—3.1, and provides:

"In each city of 500,000 or more population, there is created a police board of 5 members to be appointed by the mayor by and with the consent of the city council. * * *

* * *

"2. Adopt rules and regulations for the governance of the police department of the city."

The Police Board exercised the above power in setting out a residence requirement for Chicago patrolmen. Plaintiffs concede the existence of the rule but challenge its validity, and argue that the two enabling sections cited above are repugnant, and that the Commission rule is more specific and should prevail. They further argue that the Commission rule is more recent, thus should be viewed as superseding the earlier Police Board rule; that if the Police Board rule is to have any vitality it must be subordinate to the Commission rule.

■■ In support of this assertion plaintiffs cite *Board of Library Directors*

*v. Snigg,* 303 Ill.App. 340. We find no inconsistency between the two statutes; each is valid. In substance, the Civil Service provisions were created "in an effort to insure good public service by experienced employees of cities, and to remove from said employees political pressure that might be brought on them, and to insure their continuous duration in office against discharge without cause, \* \* \*" *Ibid.,* page 344.

As stated in *Stahl v. Board of Education,* 334 Ill.App. 366, 371: "The Civil Service Commission regulates only the *manner* of appointment and removal of civil service employees \* \* \*" [Emphasis supplied.] When the Police Board enacted its residence requirement, it did so under authority granted it in the statute to "adopt rules and regulations *for the governance* of the police department \* \* \*" The Civil Service Commission thus establishes the standards for admission to and dismissal from the police force, while the Police Board is concerned with the day-to-day functioning of the police department.

Residency is not an "employment qualification" in the normal sense of that term; rather, these are usually thought of as age, height, weight, health, etc. The requirement of residency is more properly left to the decision of that agency responsible for the mechanics of operating the police department. An agency such as the Police Board is far more capable than the Civil Service Commission of determining whether City residency should be required. Each category of Civil Service employees is characterized by its particular problems, and those most capable of resolving such problems are the people directly responsible for the effective operation of particular employees. In the case before us these people are on the Police Board. While an argument certainly can be made for calling residency an "employment qualification," we believe that the requirement has a far more direct and rational relationship to the "governance" of the police department, and that the decision should properly be left to the Police Board.

This presents a different situation from the one presented in *Board of Library Directors v. Snigg,* 303 Ill.App. 340, where this court considered clause 11 of section 5 of the Library Act's provision that the Library Board "\* \* \* shall have power to appoint a suitable librarian and necessary assistants and shall also have power to remove such appointees." The court in that case found that the Civil Service Act was applicable to library employees and that the Library Board's power to hire and discharge was therefore subject to the regulations of the Civil Service Commission. The opinion indicated that this power was one historically entrusted to the Civil Service Commission; thus, before the court would sanction the view that the power to hire and fire was to be left wholly to the judgment of the Library Board, it required the presence of express

language in the Library Act to that effect. Since there was no such language, the court held that the Civil Service provisions were applicable and the Library Board's power was to hire and fire in accord with Civil Service standards.

The *Snigg* opinion does not support the position of plaintiffs that the Police Board is prohibited from requiring residence in Chicago of all police officers. The residency requirement is a Police Board decision representing its view that the department can be more effectively governed if all patrolmen live within the City limits. In support of that view the defendants suggest that since police are on duty 24 hours a day they should reside within the jurisdiction which employs them so that it may receive the benefit of their presence; that as a general rule, policemen living within the City are more readily mobilized when needed in an emergency; that policemen living within the City have a greater stake in maintaining law and order within the City; and that policemen living within the City are more familiar with its geography and inhabitants.

Whether these were the factors actually considered by the Board is irrelevant; however, the concept of residency bears a more rational relationship to governing the police department effectively than it does to creating an employment qualification. Thus, the matter is properly left to the Police Board, and it is not necessary here to consider whether the Civil Service Commission could also make such a requirement.

The plaintiffs again argue in their reply brief that the residency requirement is qualificational and not operational. They quote from Article IV, Rules of Conduct of the Police Board, in which there are 44 rules. Plaintiffs state that 42 of these "clearly relate to a policeman's performance of his duty, using active verbs such as 'failure to perform', 'entering a tavern', 'leaving an assignment' and similar language." We are told that residency requirement within the City limits does not belong with these operational dictates.

■■ We consider the plaintiffs' view far too restricted. From a functional and operational point of view we can see many reasons why the Police Board would require its patrolmen to live in the City. Its decision to require residence within City limits is valid and binding. Therefore, the judgment is affirmed.

Judgment affirmed.

LYONS and BURKE, JJ., concur.