ARENDA TROUTMAN, Petitioner-Appellee, v. MALINDA C. KEYS, Respondent-Appellant (Michael R. Lavelle *et al.*, Respondents).*

First District (2nd Division)   No. 87—410

Opinion filed March 31, 1987.

---

*The caption has been corrected to reflect the true positions of the respective parties to this controversy.

Burton S. Odelson, of Odelson & Sterk, Ltd., of Evergreen Park, for appellant.

Richard Flowers and Michael Pritzker, both of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Respondent, Malinda Keys, a candidate for alderman in the 20th ward of the city of Chicago (candidate), appeals from an order of the circuit court of Cook County which found that she had falsely executed her statutorily prescribed "statement of economic interests" and enjoined the Chicago board of election commissioners (election commissioners), sitting *ex officio* as the Chicago officers electoral board (electoral board), from placing her name on the ballot in the February 24, 1987, municipal election.

The issues raised on appeal are whether: (1) the electoral board had jurisdiction to inquire into the substantive validity of the candidate's statement of economic interests; (2) the circuit court had original jurisdiction to inquire into the substantive validity of the statement; and (3) the candidate's statement was false under the provisions of the Illinois Governmental Ethics Act (Ethics Act) (Ill. Rev. Stat. 1985, ch. 127, par. 601—101 *et seq.*)

We have already ruled upon the issues presented in this appeal so that our decision would be timely in terms of the February 24, 1987, election. As indicated in our order of reversal issued February 17, 1987, our reasons were to be set forth in an opinion, which now follows.

On December 15, 1986, the candidate timely filed her aldermanic nominating petitions with the election commissioners, having attached

the receipt issued by the county clerk of Cook County signifying that she had filed her statement of economic interests with the county clerk. Arenda Troutman, the petitioner-objector (objector), a resident of the 20th ward, filed a verified objector's petition with the election commissioners on December 22, 1986, challenging numerous nominating petition signatures and contending that "[t]he Statement of Economic Interests filed by the candidate [was] false, perjorious [sic], null and void" in that it failed to disclose her employment by the city of Chicago's "Office of Professional Standards." The objector contended that the office of professional standards, which was under the supervision of the Chicago police board, was a unit of government separate and distinct from the unit of government in which the candidate was seeking office as alderman, namely, the Chicago city council. In response to question number 7 on her statement of economic interests, requiring disclosure of "any unit of government" which had employed her "other than" the unit with which her candidacy was concerned, the candidate had answered "none."

On December 29, 1986, the candidate filed a motion to strike the objections. At a hearing on this motion, held on January 2, 1987, the objector withdrew her objections to the petition signatures but reasserted her objection to the statement of economic interests. The hearing officer, however, found that the electoral board was without jurisdiction to consider objections to the accuracy, truth, or completeness of a candidate's statement of economic interests and, accordingly, recommended to the electoral board that the candidate's name be placed on the February ballot.

On January 7, 1987, the electoral board accepted the hearing officer's recommendation and granted "the Candidate's Motion to Strike and Dismiss the Objector's Petition on the grounds that the *** Board lack[ed] jurisdiction to pass on a filed statement of Economic Interest" and ordered the candidate's name printed on the February ballots. The objector could have sought administrative review of this decision within 10 days under the applicable statute; however, she waited until January 21, 1987, to do so. The circuit court ruled that the complaint for administrative review was not timely filed under the applicable provisions of the Election Code (Ill. Rev. Stat. 1985, ch. 46, pars. 1—1, 10—10.1) and affirmed the electoral board's findings.

The objector thereafter moved the circuit court for leave to file an amended complaint which sought a temporary restraining order barring the electoral board from placing the candidate's name on the February ballot until an evidentiary hearing could be held concerning the contents of the candidate's statement of economic interests.

On February 4, 1987, the circuit court entered a temporary restraining order enjoining the candidate from "advancing her candidacy for alderman of the 20th Ward until Feb. 5, 1987 at 1:00 p.m. telephone notice having been given," and found that remedies before the electoral board had been exhausted. On February 6, 1987, the circuit court issued a memorandum decision. It again held that the electoral board correctly found that it had no jurisdiction to assess the substantive validity of a candidate's statement of economic interests. The court then ruled that if the electoral board was not possessed of subject matter jurisdiction, the jurisdiction for entertaining challenges to the substance of a statement of economic interests must lie with the circuit court. The court construed the objector's proposed amended complaint as a petition for injunctive relief, held that the candidate's statement was false, and enjoined the electoral board from placing her name on the ballot.

The candidate appealed and moved for expedited consideration, which was granted.

I

The candidate contends that the electoral board may not evaluate the substance of a statement of economic interests filed by a candidate. The circuit court ruled accordingly and the objector does not contest the point; nevertheless, we consider the point because it forms a necessary frame of reference for determination of other issues raised.

The first paragraph of section 4A—107 of the Ethics Act (Ill. Rev. Stat. 1985, ch. 127, par. 604A—107) provides that "[a]ny person required to file a statement of economic interests under this Article who willfully files a false or incomplete statement shall be guilty of a Class A misdemeanor." The statute does not designate by whom such an action shall be brought; however, the responsibility for initiating actions for criminal violations is within the scope of the State's Attorney's duties. (Ill. Rev. Stat. 1985, ch. 14, par. 5.) The second paragraph of section 4A—107 provides that failure to file such a statement within the prescribed time results in the ineligibility of the candidate for office. Nomination papers filed without also having filed a statement of economic interests are simply declared invalid by section 10—5 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 10—5). The third paragraph of section 4A—107 directs the State's Attorney, in a case involving a local governmental officeholder, to bring an action in *quo warranto* against a person who failed to file such a statement.

A similar issue was raised in *Lara v. Schneider* (1979), 75 Ill. 2d 63, 65-67, 387 N.E.2d 660 (Kluczynski, J., dissenting), but was not con-

sidered on the merits because the case arose in the supreme court upon an original petition for *mandamus* pursuant to Supreme Court Rule 381 (87 Ill. 2d R. 381). There a statement of economic interests filed by an aldermanic candidate omitted answers to two questions. An attempted amendment containing the omitted answers referred to the wrong year. The electoral board undertook to review and determine the substantive sufficiency of the statement of economic interests under section 10—10 of the Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 10—10) and found the statement insufficient. The petition sought to have the order sustaining objections to the nominating petition expunged or, alternatively, to deny the objections and have the candidate's name placed on the ballot. The supreme court denied the application for *mandamus* on the ground that *mandamus* should not be invoked as a substitute for direct review by the appellate court. Since that time, the candidate represents that in other recent cases the electoral board has declined jurisdiction to consider issues related to contents of ethics statements and has been affirmed in this regard by the circuit court, as in the present case, from which no appeals have been taken. (See, *e.g.,* Mills v. Chicago Board of Election Commissioners, No. 87 CO 29 (Cir. Ct. Cook Cty., 1987); Mills v. Chicago Board of Election Commissioners, No. 87 CO 30 (Cir. Ct. Cook Cty., 1987).) The objector does not challenge the candidate's representation in this regard.

■■■ Our supreme court has held that in construing statutory provisions regulating elections, requirements as to which the legislature has not clearly indicated a contrary intention, will be held directory, rather than mandatory, in nature, especially where such requirements do not contribute substantially to the integrity of the election process. (*Craig v. Peterson* (1968), 39 Ill. 2d 191, 196, 233 N.E.2d 345.) Accordingly, we have examined section 10—10 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 10—10) under which the *Lara* case was brought in order to determine whether the legislature has either directed or mandated an examination by the electoral board of the substantive sufficiency of a statement of economic interests. We find that it has done neither. Section 10—10 provides in the sixth paragraph that an electoral board shall take up, among other matters, whether "nominating papers or petitions on file are valid or whether the objections thereto should be sustained." An argument may be raised that a statement of economic interests is in actuality an integral component of the term "nominating papers." The ethics statement, however, is required to be filed by the candidate with the county clerk; only a receipt thereof need be filed with the nominating papers under section 10—5 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 10—5). Further, both sections 7—

12(8) and 10—5 of the Election Code, by the language articulated, clearly differentiate between nominating papers and a statement of economic interests. (Ill. Rev. Stat. 1985, ch. 46, pars. 7—12(8), 10—5.) The situation presented in the instant case, then, is simply not a matter of directory or mandatory language; rather, a statutory gap in the procedure has become evident.

From the statutory provisions first mentioned, therefore, whether a criminal action is brought by the State's Attorney for filing a false or incomplete statement of economic interests or the nomination papers are to be deemed invalid in the absence of such a statement or an action is brought by the State's Attorney in *quo warranto* for failure of an officeholder to file such a statement, we find that the electoral board has not been given statutory jurisdiction to inquire into the truth and accuracy of a statement of economic interests which, as here, has been filed.

## II

The candidate insists that the circuit court erred in finding that it had original jurisdiction to inquire into the substantive validity of the candidate's statement of economic interests.

The Ethics Act devolves upon a candidate not only the duty to file a disclosure statement, but one which is true, correct, and complete (see *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292) and provides a criminal sanction for false or improperly filed statements of economic interests by classifying such conduct as a Class A misdemeanor (Ill. Rev. Stat. 1985, ch. 127, par. 604A—107). Prosecution for perjury might also be applicable under the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 29—10; see also "An Act *** in relation to oaths and affirmations" (Ill. Rev. Stat. 1985, ch. 101, par. 5). No provision in the Illinois Constitution, Election Code, or Ethics Act, however, expressly provides or suggests the noncriminal procedure to be followed and sanctions to be imposed in an instance where, as here, it is claimed that the statement of economic interests, timely filed by a candidate, contains false representations.

The electoral board here held that it lacked jurisdiction to inquire beyond the formalities of ascertaining whether a receipt for filing a statement of economic interests has been filed together with the nominating papers. The circuit court agreed and held that in the absence of the electoral board's jurisdiction, the court's own jurisdiction in the ensuing proceedings was not that of a reviewing court and found that it had "acquired Original Jurisdiction under the amended complaint" for injunctive relief. Section 10—10.1 of the Election Code (Ill.

Rev. Stat. 1985, ch. 46, par. 10—10.1), and cases construing this section, cited by the candidate, is inapplicable where, as here, the cause proceeded upon an amended complaint seeking relief other than judicial review of an administrative decision. Although the candidate states in her brief that she was not served with either complaint, no motion appears to have been made, and there is none of record, raising this issue and the cause appears to have proceeded, at the least, as upon oral issues joined. (See *Vider v. City of Chicago* (1895), 60 Ill. App. 595, *aff'd* (1896), 164 Ill. 354.) No point in the candidate's brief is made of such an omission, none is argued, and the issue is, therefore, waived. (87 Ill. 2d R. 341(e)(7)).) Further, the candidate could have availed herself of the procedures set forth in the rules in order to ameliorate the omission (87 Ill. 2d R. 104(d)), but evidently chose not to do so.

■ Our supreme court has held that administrative review was not intended to trap the unwary by establishing a bar to necessary relief which could not have been granted by an administrative agency through its lack of jurisdiction, and the supreme court authorized consideration by the circuit court of other pleaded remedies in such a case. (*Chestnut v. Lodge* (1966), 34 Ill. 2d 567, 571-72, 216 N.E.2d 799; see also *Lenard v. Board of Education* (1975), 26 Ill. App. 3d 188, 190, 324 N.E.2d 657, *appeal denied* (1975), 60 Ill. 2d 597; *People ex rel. Peterson v. Valencik* (1970), 131 Ill. App. 2d 264, 266-67, 266 N.E.2d 752, *appeal denied* (1971), 46 Ill. 2d 594.) Furthermore, where the administrative agency's decision gives rise to pleaded issues which could not have been considered by the agency, but the record presented to the circuit court permits a fair determination of such issues, then the scope of review by a court of original jurisdiction extends to all questions of law and fact presented under the pleadings by that record. Ill. Rev. Stat. 1985, ch. 110, par. 3—110; *Howard v. Lawton* (1961), 22 Ill. 2d 331, 333-34, 175 N.E.2d 556.

■ The circuit court in the present case held that it was possessed of original jurisdiction in the matter set forth in the amended complaint. We agree. Under the 1970 Illinois Constitution, the circuit courts have original jurisdiction over all justiciable matters not explicitly assigned to the supreme court in addition to the power to review administrative decisions as provided by statute. (Ill. Const. 1970, art. VI, sec. 9.) We hold that the circuit court here properly considered the issue as to the correctness and completeness of the candidate's statement of economic interests in the instant case, as raised in the amended complaint, notwithstanding the fact that the case first arose upon administrative review for which the court had no jurisdiction, mirroring the agency's lack of jurisdiction, to consider the issue.

The circuit court's decision to accept jurisdiction of the amended complaint was also in consonance with the supreme court's recognition that, in particular circumstances, timeliness of judicial action is worthy of consideration in order to avoid unjust or harsh results. (*Dooley v. McGillicudy* (1976), 63 Ill. 2d 54, 58, 345 N.E.2d 102; *Lewis v. Dunne* (1976), 63 Ill. 2d 48, 50, 344 N.E.2d 443.) The expeditiousness required in order to do justice in this instance is demonstrated by the temporal facts first related in this opinion.

Assuming, *arguendo*, that the circuit court had refused to entertain the issue raised by the amended complaint, the objector would have been compelled to file an entirely new action in which no new issue could have been raised, no additional evidence received, and no useful purpose would have been served. The result would have been delay and an unnecessary additional burden upon judicial administration and the resources of all concerned. Here, too, an election problem was considered by a court generally assigned to decide all matters involved in elections. Circuit Court of Cook County, General Order No. 1.2 IV.

### III

■ We next address the candidate's final issue, whether the circuit court erred in ruling that her employment through the police board constituted employment by a unit of government other than the unit to which she sought election, namely, the Chicago city council.

Article XIII, section 2, of the 1970 Illinois Constitution authorizes the General Assembly to impose the requirement of filing economic interests statements upon candidates for, or holders of, offices "in units of local government and school districts." Section 1 of article VII, the local government article of the 1970 Illinois Constitution, defines "units of local government" as including, among others, municipalities, townships, special districts, and those units designated by law as units of local government which exercise limited governmental power or powers in respect to limited governmental subjects. A key phrase in the definition of unit of local government is that it be one designated as a unit of local government by law. That phrase is repeated in article VII, section 8, of the 1970 Illinois Constitution, which limits powers to be exercised by such units only to those granted by law. The objector maintains, and the circuit court held, that the police board of the city of Chicago is such a unit of local government so as to have required the candidate to have answered question 7 of her statement of economic interests with the name of the police board instead of "none," as she did. In this determination the circuit court erred.

Examples of what is meant by a unit designated as a unit of local

government by law can be found in the statutes enacting the creating of townships and special districts, also included in the definition set forth in article VII, section 1, of the 1970 Constitution. A township is a relatively autonomous local government granted certain quasi-corporate powers with which to exercise limited general governmental functions. (Ill. Rev. Stat. 1985, ch. 139, par. 0.1 *et seq.*; *People ex rel. Deneen v. Town of Thornton* (1900), 186 Ill. 162, 173, 57 N.E. 841; *Hill v. Butler* (1982), 107 Ill. App. 3d 721, 437 N.E.2d 1307, *appeal denied* (1982), 91 Ill. 2d 569.) A special district also exercises relatively autonomous local governmental powers, is granted certain corporate powers, and provides a single service, such as the Chicago Transit Authority. (Ill. Rev. Stat. 1985, ch . 111²/₃, par. 301 *et seq.*; *Chicago Transit Authority v. Danaher* (1976), 40 Ill. App. 3d 913, 917-18, 353 N.E.2d 97. See generally 1982 Ill. Att'y Gen. Op. at 5; 1981 Ill. Att'y Gen. Op. at 27; 1973 Ill. Att'y Gen. Op. at 102.) Almost all local governmental units and special districts enjoy fiscal powers, including the right to tax, levy special assessments, and possess bonding powers. See J. Anderson & A. Lousin, *From Bone Gap to Chicago: A History of the Local Government Article of the 1970 Illinois Constitution*, 9 J. Mar. J. Prac. & Proc. 698, 700-03 (1976).

An examination of the law authorizing the establishment of a police board for the city of Chicago (Ill. Rev. Stat. 1985, ch. 24, par. 3—7—3.1), upon which the objector relies, reveals no such designation as a unit of local government as that term is used in the 1970 Illinois Constitution, Election Code, and Ethics Act. Each provision of the police board statute reveals that the powers enumerated are those which are to be utilized only in connection with the police department of the city of Chicago. Nothing in the statute creating the police board of the city of Chicago remotely resembles a designation of a unit of local government by law when compared to the examples set forth in the preceding paragraph. Nor is any provision of the Police Training Act (Ill. Rev. Stat. 1985, ch. 85, par. 501 *et seq.*), also cited by the objector, supportive of her position. Nothing to the contrary is found in the 1974 Illinois Attorney General's Opinion No. 684, further relied upon by the objector.

Addressing themselves to problems creating by a proliferating number of local governmental units,[1] the delegates to the Sixth Illinois

---

[1]The number had grown to more than 6,500 such units by 1970, largely due to limitations on increasing local debt imposed by section 12 of article IX of the 1870 Illinois Constitution. See J. Anderson & A. Lousin, *From Bone Gap to Chicago*, 9 J. Mar. J. Prac. & Proc. 698, 701-04 (1976).

Constitutional Convention no doubt would have been astonished to learn that they were including all local departments, boards, and commissions, operating as instruments and agencies of local governments, within the definition of units of local government set forth in article VII, section 1, of the 1970 Constitution.

Reliance by the circuit court and the objector upon *Miceli v. Lavelle* (1983), 114 Ill. App. 3d 311, 448 N.E.2d 989, is misplaced. There, the candidate for office filed his statement of economic interests with his employer, the board of education of the city of Chicago. The board of education was created statutorily as "a body politic and corporate" and is necessarily a unit of government itself, having been thereby so designated by law. (Ill. Rev. Stat. 1985, ch. 122, par. 34—2.) Accordingly, the court in *Miceli* recognized the board of education as a separate unit of government and the parties to that action did not contend otherwise. (*Miceli v. Lavelle* (1983), 114 Ill. App. 3d 311, 317, 448 N.E.2d 989.) Conversely, while statutes also created the police board, its creation was merely as an instrument or agency of the larger and inclusive city government. (Ill. Rev. Stat. 1985, ch. 24, par. 3—7—3.1.) Neither the police board nor the city police department was created as a body politic and corporate; rather, the board was created as part of an existing local government along with the authorization for the positions of other appointed city officials such as corporation counsel, city collector, city superintendent of streets, and city comptroller. Ill. Rev. Stat. 1985, ch. 24, pars. 3—7—1, 3—7—3.1, 21—11, 21—12.

From the foregoing we conclude that the police board is not a unit of local government designated by law as separate from the city of Chicago, but is, instead, merely a division or part of the city's government. (See *Manion v. Kreml* (1970), 131 Ill. App. 2d 374, 264 N.E.2d 842.) The candidate's statement of economic interests in the present case, therefore, was not false when it stated that she had not been employed by a unit of government "other than" the city of Chicago.

Accordingly, the order of the circuit court enjoining the electoral board from placing the candidate's name on the ballot requires reversal.

Reversed.

SCARIANO, P.J., and STAMOS, J., concur.