CHARLES PELINI *et al.*, Plaintiffs-Appellees, v. METROPOLITAN INSURANCE COMPANY, Defendant-Appellant.

First District (2nd Division)   No. 1—90—3087

Opinion filed March 31, 1992.—Rehearing denied May 6, 1992.

Knight, Hoppe, Fanning & Knight, Ltd., of Park Ridge (Colleen H. Considine, Martin D. Hoke, and Sarah Hansen Sotos, of counsel), for appellant.

Foreman & Foreman, Ltd., of Chicago (Jeffrey Foreman and Jerome Foreman, of counsel), for appellees.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

In a declaratory judgment action brought for reformation of an automobile insurance policy, the circuit court found the issues in favor of plaintiffs, Charles Pelini and Richard Postin, and against defendant, Metropolitan Insurance Company (Metropolitan), from which Metropolitan appeals. The questions raised on review are whether (1) after July 1, 1983, in renewed policies, the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1987, ch. 73, par. 613 *et seq.*) required offers of underinsured motorist insurance equal to bodily injury liability limits when the limits purchased by the insured exceeded the statutory minimum for uninsured motorist coverage; (2) evidence of Metropolitan's alleged offers was erroneously excluded; and (3) reformation of the subject policy was the proper remedy.

On October 14, 1988, plaintiffs were involved in an automobile accident and sustained injuries in excess of the at-fault driver's liability insurance, which had limits of $50,000 per person and $100,000 per accident bodily injury coverage. Plaintiff Pelini was permissively driving his parents' automobile, insured by Metropolitan, at the time of the accident. Plaintiffs' amended complaint contained a count seeking a declaratory judgment against Metropolitan, based upon the Pelinis' insurance policy. Plaintiffs asserted that the named insureds never received from Metropolitan an offer to provide underinsured motorist coverage equal to the policy's bodily injury liability limits, which were $100,000 per person and $300,000 per occurrence, and that such an offer was required by the Code after July 1, 1983. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2.) The policy at issue had been renewed several times and again on September 7, 1988, about one month prior to the accident. It was effective until March 8, 1989. After unsuccessful attempts to dismiss the complaint, Metropolitan answered the allegations set forth, claiming no knowledge of whether the named insured received any offers de-

scribed and demanded strict proof thereof. Metropolitan also denied the allegation that it was required by law to make such offers.

Guido and Shirley Pelini, the named insureds, testified at trial. Shirley asserted she never knew about the underinsurance coverage limits until plaintiffs' lawyer contacted her after the accident. Guido claimed he never opened mail or read any letters addressed to him, except for social correspondence. He knew nothing about insurance matters. Shirley testified that she purchased the auto insurance, but never received any documents from Metropolitan explaining the coverage or coverage limits to which she was entitled.

Metropolitan attempted to present certain exhibits as evidence of the insured being offered underinsured insurance coverage through the mail. Judy Knight, employed by Metropolitan in various managerial capacities since 1978, and its regional service manager at the time of trial, testified that she was responsible for overseeing new business processing, accounting, files, premium processing, the computer room and output handling. She was familiar with those procedures while employed as Metropolitan's customer service supervisor, her previous position. She was versed in the procedures for renewing policies in the State of Illinois, as well as 36 other States. This unit was required to make certain that the mailings complied with various States' requirements.

She was familiar with Metropolitan's exhibit 1 for identification, a coverage election/rejection form for uninsured motorists insurance in Illinois. Metropolitan exhibit 2 for identification contained instructions to Metropolitan employees as to what documents were to be included in each mailing. Exhibit 1 for identification was sent by regular mail, in the tens of thousands. Undeliverable mail was returned to the customer service unit. Efforts are made to update the addresses, and the documents are remailed.

Knight was also familiar with Metropolitan's exhibits 3, 4, 5, and 6 for identification. Exhibit 3 was a microfiche record of precontinuation letters dated December 31, 1987, which explained coverage changes, and were sent to all Metropolitan's insureds. Metropolitan's exhibit 4 was an uninsured motorist election/rejection form advising the insured of coverages he currently has and changes proposed, as well as options for increased coverages and their costs. Metropolitan's exhibit 5 was an explanation of coverages and their availability, which was mailed with exhibit 4. Exhibit 6 was a certificate of mailing, listing the names of insureds to whom the forms allegedly were mailed on January 4, 1988. The Pelinis' name was on the exhibit 6 list. Knight testified that these documents were

made and kept in the ordinary course of business. She had no personal knowledge of the mailings.

The circuit court denied admission in evidence of exhibits 3, 5 and 6 for identification, based upon hearsay objections and the lack of foundation to establish the business records exception to the rule. Metropolitan's counsel made an offer of proof as to these exhibits, in which she allegedly would have shown through the exhibits that Metropolitan did mail offers of uninsured/underinsured motorist insurance options and explanations of them to their insureds. Metropolitan did not offer exhibit 4 into evidence.

The circuit court found there was no evidence put forth as to an offer of underinsured motorist insurance; such an offer was required by law; and, therefore, the court reformed the policy to include underinsured motorist insurance up to the existing policy bodily injury liability limits of $100,000 per person and $300,000 per accident. Metropolitan appeals.

Metropolitan identifies error in the circuit court's construction of section 143a—2 of the Code (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2) (section 143a—2) as requiring a *pre-July 1983* statutorily mandated offer to the insured of underinsured motorist insurance in a *post-July 1983* renewal policy. It maintains that the law requires only *inclusion* of underinsured motorist insurance in such policies, not an additional *offer.*

■■ The Code, as amended in 1982 and applicable to the instant case, links underinsurance coverage to uninsurance coverage and sets forth several provisions and operative periods within which an insurer is required to pursue certain procedures. Until July 1, 1983, an insurance company must *offer* underinsured motorists coverage in every policy renewed or delivered in Illinois (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3)). On and after July 1, 1983, the Code requires that underinsured motorist coverage be *included* in all policies "in an amount at least equal to the total amount of the uninsured motorist coverage provided in that policy *where such uninsured motorist coverage exceeds the limits set forth in Section 7—203 of the Illinois Vehicle Code* [(Ill. Rev. Stat. 1987, ch. 95½, par. 7—203)] [(section 7—203)]." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(5).) The statutory minimum coverage set forth in section 7—203 was $20,000 per person and $40,000 per accident at the time pertinent here. The Pelinis' policy contained uninsured motorist coverage of $25,000 per person and $50,000 per accident, thus in excess of the statutory minimum.

The Pelinis' insurance policy had been written first in 1979 and renewed from time to time until the last renewal before the instant accident. The 1988 renewal policy had bodily injury liability limits of $100,000 per person and $300,000 per accident.

■ Metropolitan maintains that because the insurance policy was renewed in 1988, which was, of course, after the July 1, 1983, *offer* period fixed by statute, insurance companies were no longer required to *offer* underinsured coverage; instead, all policies must *include* underinsured motorist insurance in an amount equal at least to the total amount of uninsured motorist coverage when the uninsured coverage exceeds the statutory minimum (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(5)). Metropolitan asserts that the coverage afforded by its policy covering the Pelinis was in consonance with the law.

The supreme court has recently addressed a similar statutory construction problem in *DeGrand v. Motors Insurance Corp.* (1992), 146 Ill. 2d 521 (*DeGrand*). Although the insureds in that case elected to purchase only the minimum uninsured motorist coverage statutorily required at that time, the supreme court's analysis of section 143a—2(5) is controlling in this case. The *DeGrand* opinion observes (*DeGrand v. Motors Insurance Corp.*, 146 Ill. 2d at 529-30):

> "The 1982 statute provided that whenever an individual purchased uninsured motorist coverage *in an amount greater than the statutory minimum, the insurer must also provide underinsured motorist coverage in the same amount.* The 1982 statute also provided that after July 1, 1983, the insurer must provide and the insured must accept the underinsured motorist coverage. The new statute did not permit the insurer or insured to reject this coverage. The 1982 statute provided additional coverage for many individuals purchasing automobile insurance after July 1, 1983. *If the insured purchased uninsured motorist coverage in an amount above the statutory minimum, the insured must also purchase underinsured motorist coverage in the same amount.*
> \*\*\*
> According to the 1982 statutory scheme, an automobile owner who purchases the minimum amount of uninsured motorist coverage after July 1, 1983, was entitled *neither to an offer* of underinsured motorist coverage *nor to automatic inclusion* of such coverage in an amount commensurate with uninsured motorist coverage \*\*\*. The policy had to contain

underinsured motorist coverage in an amount at least equal to the total amount of uninsured motorist coverage. *Only those policies issued prior to July 1, 1983,* were entitled to an offer of underinsurance." (Emphasis added.)

The Pelinis, in having purchased uninsured motorist coverage in excess of the statutory minimum, were entitled to automatic inclusion in their automobile policy of underinsurance coverage in the same amount. (*DeGrand,* 146 Ill. 2d 521.) Metropolitan furnished them with such insurance. The circuit court erred in requiring of Metropolitan an offer of greater coverage than they possessed and the judgment must be reversed.

Plaintiffs' amended complaint, in paragraph 6 of count II, alleges that "[s]ubsequent to September 7, 1988, to and including the present time, the named insured have never received a [*sic*] *** offer of underinsured motorist coverage equal to their bodily injury liability limits as required by the Illinois Insurance Code, ch. 73, Ill. Rev. Stat., par. 755a—2." The ellipsis marks denote the absence of the word "proper," which plaintiffs struck through by interlineation with circuit court permission. Also to be noted is the fact that plaintiffs, at trial, argued that they were *never* offered such coverage at any time. They were given leave to amend their complaint to that effect. No such amendment appears to have been made; Metropolitan denied the allegations as orally amended, however, and the case was tried upon that theory. This issue will be regarded as having been joined orally. (*Troutman v. Keys* (1987), 156 Ill. App. 3d 247, 253, 509 N.E.2d 453; *Vider v. City of Chicago* (1895), 60 Ill. App. 595, *aff'd* (1896), 164 Ill. 354.) Since plaintiffs alleged and offered some proof that Metropolitan never made such an offer, the circuit court required Metropolitan to demonstrate affirmatively that it did so.

Plaintiffs' argument in this regard is little different from that advanced by the *DeGrand* plaintiffs. They represented to the supreme court that they never knew about the underinsurance motorist coverage until after the accident, to no avail. There is no dispute here that Metropolitan included the same amount of underinsurance as the Pelinis had purchased for uninsurance in their September 7, 1988, renewal policy. Metropolitan thereby fulfilled its statutory obligation.

In light of the disposition we make in this matter, we need not and do not reach the issues concerning evidence of alleged offers by Metropolitan or appropriate reformation of the Pelinis' insurance policy.

From the foregoing analysis, the declaratory judgment order entered by the circuit court in the case *sub judice* must be reversed.

Reversed.

SCARIANO and DiVITO, JJ., concur.